# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

JAQUISY DIGGINS,

    Plaintiff,

*v*.                                Case No. 06-CV-15772

COMMISSIONER OF         DISTRICT JUDGE JOHN CORBETT O'MEARA
SOCIAL SECURITY,          MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for Supplemental Security Income (SSI) benefits. This matter is currently before the Court on cross motions for summary judgment.

On June 18, 2003, Shatina Grady, acting as next friend, filed the instant claim on behalf of her daughter JaQuisy (hereinafter "Plaintiff"), then twelve years of age. (Tr. at 40-44, 99.) The claim was denied at the initial administrative stages. (Tr. at 25.) On October 20, 2005, Plaintiff appeared before Administrative Law Judge ("ALJ") Bennett Engleman who considered the case *de novo*. In a decision dated May 11, 2006, the ALJ found that Plaintiff was not disabled. (Tr. at 14-21.) Plaintiff requested a review of this decision on July 3, 2006. (Tr. at 9-10.)

The ALJ's decision became the final decision of the Commissioner on November 3, 2006, when the Appeals Council denied Plaintiff's request for review. (Tr. at 5-7.) Thereafter, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

**B.     Standard of Review**

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts relevant to an application for disability benefits. A federal court "may not try the case *de novo*. . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545

2

(6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

## C. Governing Law

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

A child will be considered disabled if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. §

1382(a)(3)(C)(I). To determine whether a child's impairment results in marked and severe limitations, SSA regulations[1] prescribe a three step sequential evaluation process:

1. A child will be found "not disabled" if she engages in substantial gainful activity.

2. A child will be found "not disabled" if she does not have a severe impairment or combination of impairments.

3. A child will be found "disabled" if she has an impairment or combination of impairments that "meets, medically equals, or functionally equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

20 C.F.R. § 416.924(a).

In the third step of this analysis – namely, whether a child's impairment(s) functionally equals the listings – the Commissioner assesses the functional limitations caused by the child's impairment(s). 20 C.F.R. § 416.926a(a). The regulations direct the Commissioner to evaluate how the child functions in six domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). These domains are:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well being.

*Id.*

At issue in this case are the first two domains. As to the first, the regulations state that the Commissioner must consider how well the child acquires or learns information and how well that

---

[1] For a history of these regulations, see *Molina v. Barnhart,* No. 00-CIV-9522(DC), 2002 WL 377529 (S.D.N.Y. March 11, 2002).

information is used. Claimants with limitations in this domain may misunderstand words about space, size, or time; have difficulty rhyming words or the sounds in words; have difficulty recalling important things learned in school the previous day; have difficulty solving mathematics questions or computing arithmetic answers; or speak only in short, simple sentences with difficulty explaining what is meant. 20 C.F.R. § 416.926a(g)(3). For children of ages six through twelve, the regulations state the following as to this domain:

> When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv).

As to the second domain – that of attending and completing tasks – the regulations state that the Commissioner considers how well the child is able to focus and maintain attention, initiate, carry through and complete activities, and the pace and ease with which activities are completed. Claimants with limitations in this domain are easily startled or overreactive, slow to focus on or fail to complete activities of interest, become easily sidetracked, frequently interrupt others, become easily frustrated and give up on tasks, including those they are capable of completing, and require extra supervision to keep engaged. 20 C.F.R. § 416.926a(h)(3). For six- to twelve-year-old children, the regulations state as follows with regard to this domain:

> When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able

to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv).

If the child's impairments result in "marked" limitations in two domains, or an "extreme" limitation in one domain, the impairment functionally equals the listing and the child will be found disabled. 20 C.F.R. § 416.926a(d). A marked limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An extreme limitation is one that "interferes *very* seriously with [a child's] ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(3)(i) (italics added). "Marked" and "extreme" limitations in a given domain can be established by standardized test scores that are two or three standard deviations, respectively, below the mean – that is, either in the lowest 2.5 percent of the distribution or the lowest 1 percent – provided, however, that the scores are representative of day-to-day functioning. 20 C.F.R. §§ 416.926a(e)(2)(iii), 416.926a(e)(3)(iii). Test scores are not conclusive, therefore, and the bulk of 20 C.F.R. § 416.926a is devoted to "general descriptions of each domain" against which a claimant's functioning may be compared.

### D. ALJ's Findings

The ALJ applied the Commissioner's child disability analysis to Plaintiff's claim and found that Plaintiff had not engaged in substantial gainful activity. (Tr. at 21.) At step two, the ALJ found that Plaintiff's impairments were "severe." (*Id.*) At step three, the ALJ found that

Plaintiff's combination of impairments did not meet or equal the listings in the regulations. (*Id.*) More specifically, the ALJ found that Plaintiff did not exhibit an "extreme" limitation in any of the six domains, nor "marked" limitation in any two domains of functioning, concluding that Plaintiff had a "less than marked" limitation in domains one through three, and "no" limitation in the remaining domains. (*Id.*) (*See also* Tr. at 20.)

E.  **Arguments of the Parties**

Counsel for Plaintiff disputes the ALJ's findings as to domains one (acquiring and using information) and two (attending and completing tasks), arguing that the administrative record provides substantial evidentiary support for "extreme," or in the alternative "marked" limitations in these domains.  Counsel for the Commissioner, pointing to much of the same evidence, maintains that substantial evidence supports the ALJ's decision.

F.  **Evidence and Testimony Presented to the ALJ**

Evidence contained in the administrative record indicates that in early October 2003, JaQuisy underwent a psychological evaluation conducted at the request of the Disability Determination Service by Elizabeth S. Bishop, Ph.D. a series of intelligence and achievement tests were also administered.  JaQuisy had an IQ score of 83, placing her at the bottom of the average range of intelligence. (Tr. at 136.)  Achievement test scores were in the low average range. (Tr. at 136-137.) Academic achievement tests indicated reading and spelling at the fourth grade level and arithmetic at a third-grade level. (*Id.*) Personality testing indicated positive self-esteem, but with possible problems in terms of social relationships and interaction. (*Id.*) The examining psychologist concluded that testing indicated a learning disability in mathematics and some problems adjusting to a new school.  It was suggested that JaQuisy would benefit from special education services and counseling. (*Id.*)

In October 2003, a therapist at the University of Michigan School of Social Work's Family Assessment Clinic reported that she had been working with JaQuisy since March of that year. (Tr. at 139.) Notes indicate that she received generally positive assessments and that she appeared open, enthusiastic and upbeat. (Tr. at 123-127.)

In late October 2003, and Individualized Education Program Team (IEPT) Report was completed for JaQuisy. With regard to her then-present level of performance, the report states that her "writing skills are significantly below grade level. She can write a complete sentence but does not use adjectives or adverbs well, and needs lots of assistance to write reports for class that meet teachers' criteria." (Tr. at 90.)

In a Special Education Programs/Services form completed the same day, JaQuisy was scheduled for 15 to 30 minutes per week of work on speech and language. (Tr. at 92.) With regard to her then-present level of educational performance, the report states that

> her teachers report she is eager to please and appears to like school. She has trouble keeping focus on the task but is generally easy to redirect. She makes friends easily, but tends to socialize at inappropriate times. Academic testing completed in September of this year shows low-average scores in most academic areas. Teachers report that writing skills could use extra assistance. . . . Speech-language testing in September of this year showed difficulty with vocabulary and categorizing. On the Test of Language Development-Intermediate, she scored in the fifth percentile on the "general" sub test . . . . Teachers verify that JaQuisy does have only a basic vocabulary and often needs help with new vocabulary introduced in class."

(Tr. at 95.)

In early November 2003, JaQuisy's seventh-grade teacher completed a questionnaire. With regard to JaQuisy's ability to acquire and use information, she stated that JaQuisy evidenced a slight problem understanding and participating in class discussions, and obvious problems understanding vocabulary as well as comprehending and doing math problems. (Tr. at 141.) JaQuisy was said to evidence serious problems comprehending oral instructions, providing

9

organized oral explanations, expressing ideas in writing, learning new material, recalling and applying previously learned material, and applying problem-solving skills. (*Id.*) JaQuisy was rated as having a very serious problem in reading and comprehending written material. (*Id.*) As to JaQuisy's ability to attend and complete tasks, she was rated as having no problem carrying out simple instructions or waiting to take turns. (Tr. at 142.) She was rated as having a slight problem sustaining attention, and an obvious problem carrying out multistep instructions and waiting to take turns. (*Id.*) The teacher rated JaQuisy as having a serious problem refocusing to task, organizing school materials and completing homework. (*Id.*) JaQuisy was rated as having a very serious problem paying attention, focusing attention to complete assignments, completing work accurately, working without distracting herself or others, and working at a reasonable pace. (*Id.*)

In a "Learning Goals" assessment done during the 2004 - 2005 school year, JaQuisy was said to be "progressing" in areas of vocal music and citizenship. (Tr. at 83.) Many of these same areas were assessed as being "at grade level." (*Id.*) She had attended 88% of the general music classes and 93% of the choir classes scheduled. (*Id.*) In an assessment relating to art classes, JaQuisy was found to be "progressing" or showing "mastery" and was functioning at grade level. (Tr. at 84-85.) The assessment stated that JaQuisy attended classes 94% of the time and was absent only one day. (*Id.*) According to her teacher, "JaQuisy has shown a lot of creative promise in my class. She has demonstrated strengths in both drawing and collage." (Tr. at 85.) A Music Report Card completed by JaQuisy's teacher stated that she was progressing in all "learning goals" and was performing at grade level in all but one of the learning goals assessed. (Tr. at 86.)

JaQuisy's Middle School Report Card for the first semester of the 2004-2005 school year utilized a four-point scale, with 1 being the lowest and 4 the highest. (Tr. at 87.) JaQuisy received a 2 in citizenship. (Tr. at 87.) In mathematics, she completed 93% of her work and evidenced a

70% mastery of concepts. (*Id.*) In science, she scored 2.5, having completed 51% of her lab book assignments and 71% of assessments. (*Id.*) In language arts, she completed 88% of the assigned work, 78% of her journal assignments, and was given a score of 2 on the 4-point scale. (*Id.*) In social studies, her mastery of concepts was rated at 2.5 and she completed 65% of assignments. (*Id.*) In cooperative learning, she was rated 2 on the 4-point scale. (*Id.*)

In the winter of 2004, during JaQuisy's seventh grade year, she took the Michigan Educational Assessment Program (MEAP) test. A Student Report indicates that in reading and English language arts, she scored at the "Apprentice" level.[2] She scored at the "Basic" level in writing.[3] (Tr. at 81-82.)

During the 2004-2005 school year, JaQuisy's teacher evaluated her progress, this time using a 1 to 5 scale where 1 is "problematic" and 5 is "above average." (Tr. at 98.) Mrs. Theil rated her academic performance in reading and her relationship with peers at 3. (Tr. at 98.) Mrs. Theil rated JaQuisy's academic performance in mathematics, written expression, and homework completion at 2, as well as her ability to follow directions, disrupting class, completing assignments and organizational skills. Mrs. Miller rated JaQuisy's work-completion ability, ability to follow directions and disrupting class at 3 (average). (Tr. at 101.) Mrs. Miller rated her reading, written expression, assignment completion and organizational skills at 2 (problematic). (*Id.*) JaQuisy's relationship with peers was rated at 4 (above average) by Mrs. Miller. (*Id.*) Ms. Kreiner rated JaQuisy's academic performance in homework completion and organizational skills at 1 (problematic), her relationship with peers at 3, and her ability to follow directions and disrupting class at 2 (problematic). (Tr. at 105.)

---

[2]This level is considered to be "showing little success in meeting Michigan standards." (Tr. at 81.)

[3]At this level, a student demonstrates "'Basic' knowledge and skills of Michigan standards." (Tr. at 81.)

11

Another IEPT Report was completed for JaQuisy in November 2005. It was reported that JaQuisy received grades in the D range during the first marking period. (Tr. at 107.) Testing results indicated that she was reading at a 5.4 grade level and doing math at 5.1 grade level. (*Id.*) Achievement test results were reported to indicate scores in the average to below average range in reading, math and written expression. Written expression composite results placed JaQuisy in the 14th percentile and she tested in the 10th percentile for language skills. (*Id.*) The report indicates that JaQuisy was considered speech- and language-impaired. (*Id.*) (*See also* Tr. at 109.)

In mid-January 2006, Mrs. Theil completed a school activities questionnaire. (Tr. at 113-114.) She stated that JaQuisy had significant difficulty working independently and trouble focusing on assignments. She did, however, work well when in close contact with the teacher. Mrs. Theil reported no attendance concerns, but noted that JaQuisy was very aggressive in the hallway and had received many warnings about her behavior. (Tr. at 113.) Mrs. Theil reported that JaQuisy's communication skills did not severely hinder her academic performance. She spoke clearly and intelligibly, but had some trouble processing requests and directions. (Tr. at 114.) JaQuisy was reported to have few problems with her peers; she appeared to get along well with her classmates, and was usually respectful to her teachers. (*Id.*) Mrs. Theil stated that "JaQuisy's poor academic performance leads to occasional classroom behavior problems. Overall, she benefits from small groups and direct one-on-one instruction." (*Id.*)

At the administrative hearing, Shatina Grady testified that JaQuisy had to repeat seventh grade. (Tr. at 159.) In response to a question about her academic performance, Ms. Grady stated, "so far . . . , she's doing okay." (Tr. at 155.) Ms. Grady stated that JaQuisy's current teachers were "a little concerned about her attention, not a great deal." (*Id.*) Ms. Grady also noted concern on the part of JaQuisy's teachers with her reading comprehension skills. (Tr. at 157.) At the close

of the administrative hearing, the ALJ invited counsel for Plaintiff to file exhibits, a request with which counsel complied. (Tr. at 162.) (*See also* Tr. at 96, 106, 113.)

## G. Review of ALJ's Determination

### 1. Legal Standards

After review of the record, I suggest that the ALJ utilized the proper legal standard in his analysis of Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In *Washington v. Barnhart,* 481 F. Supp. 2d 905 (N.D. Ill. 2007), substantial evidence supported findings that an eight-year-old child had "less than marked" impairments in domains one and two even though the child was diagnosed with A.D.H.D. and bipolar disorder, had an IQ of 80, and performed below grade level in reading, writing and mathematics. In *Allen v. Barnhart,* No. 05 Civ. 7855(SAS), 2006 WL 2255113 (S.D.N.Y. Aug. 4, 2006), the court found that although the child showed delays in expressive communication and language, cognitive and speech skills, and functioned "significantly below her age level" in these areas, substantial evidence supported the Commissioner's findings of "less than marked" impairments in domains one and two where

the child evidenced the ability to focus on tasks, follow directions "most of the time," and showed progress in her ability to be attentive.

After review of this record, I suggest that the evidence in this case is comparable to that in *Kinsella* and *Allen*, *supra*, and constitutes substantial evidence supporting the findings of the ALJ. Although she had to repeat seventh grade, none of JaQuisy's test results, including her IQ score of 83, equal the values considered in the Commissioner's regulations as indicative of severe or extreme impairments. (Tr. at 95, 107, 136-137.) Although JaQuisy reportedly received some poor grades in school and was rated by some teachers as evidencing serious problems, or as "problematic" in some areas (Tr. at 95, 98, 141), her 2004-2005 first semester middle school report card noted that in mathematics, she completed 93% of her work and evidence a 70% mastery of concepts. (*Id.*) In science, she scored 2.5 on a 4-point scale, completing 51% of lab book assignments and 71% of assessments. (*Id.*) In language arts, she completed 88% of the assigned work, 78% of journal entries, and was given a score of 2 on the 4-point scale. (*Id.*) In social studies, her mastery of concepts was rated at 2.5 and she completed 65% of assignments. (*Id.*) JaQuisy's seventh-grade teacher rated her as having no problem carrying out simple instructions. (Tr. at 141.) The therapist at the University of Michigan School of Social Work gave JaQuisy generally positive assessments and stated that she appeared open, enthusiastic and upbeat. (Tr. at 123-127.) Ms. Grady testified that JaQuisy's current teacher felt that she was academically "doing okay." (Tr. at 155.)

Accordingly, I suggest that the record contains substantial evidence supporting the ALJ's decision and, therefore, after review of the record, I conclude that the ALJ's decision, which ultimately became the final decision of the Commissioner, is within that "zone of choice within

which decisionmakers may go either way without interference from the courts." *Mullen*, 800 F.2d at 545.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

           s/ *Charles E Binder*
           CHARLES E. BINDER
Dated: October 4, 2007            United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James A. Brunson and on Eric I. Frankie, and on District Judge John Corbett O'Meara in the traditional manner.


Date: October 4, 2007         By    s/Patricia T. Morris
                                    Law Clerk to Magistrate Judge Binder